510 A.2d 243

**Steven Lamont CLARK**

v.

**STATE of Maryland.**

No. 145, Sept. Term, 1984.

Court of Appeals of Maryland.

June 26, 1986.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

**484**

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

We granted certiorari in this case to determine whether a trial judge may forbid communication between counsel for co-defendants regarding matters of trial strategy.

The parties have agreed to the following facts. Appellant, Steven Lamont Clark, and his co-defendant, Jonathan Hemphill, were indicted by a Baltimore City Grand Jury for various narcotic-related offenses. Prior to trial, both defendants moved for severance, and the trial court denied both motions. During the voir dire examination of prospective jurors, the trial judge asked defense counsel whether they wanted to pool their peremptory challenges or exercise them individually. The following colloquy occurred:

> MR. KARCESKI [counsel for Hemphill]: We each have 20 challenges.[1] I am only saying I don't want to do anything at this point to upset the system or to cause an unnecessary delay, but if we are going to have a problem,

---

1. Former Maryland Rule 753(a)(1) provided that where the defendant was subject to a sentence of death, life imprisonment or twenty years or more of imprisonment, each defendant was permitted twenty peremptory challenges. Both defendants sub judice were subject to more than twenty years imprisonment, and thus both qualified for the twenty challenges. Former Rule 753 implemented Md. Code (1980) (Repl.Vol.), § 8–301 of the Courts and Judicial Proceedings Article. In 1984, with the adoption by this Court of the new Maryland Rules, Rule 753 was replaced by Rule 4–313. In 1986, the legislature repealed and reenacted § 8–301 of the Courts Article. 1986 Md. Laws ch. 656. Effective July 1, 1986, § 8–301 provides that where the defendant is subject to death, because notice of intention to seek a death sentence has been filed, and where the defendant is subject to life imprisonment, each defendant is permitted twenty peremptory challenges and the State is permitted ten for each defendant. § 8–301(a) & (b). Where the defendant is subject to a sentence of twenty years or more, however, each defendant is permitted ten peremptory challenges and the State is permitted 5 for each defendant, except where the defendant is charged with a common law offense for which no penalty is provided by statute. § 8–301(c). In all other cases, each party is permitted four peremptory challenges. § 8–301(d).

I just don't know whether we take a chance and go with it now or hope it works out. If it doesn't and we come up short, I think the court is well aware under [*Dean v. State*, 46 Md.App. 536, 420 A.2d 288 (1980)], we have created a tremendous monster and the only way to rectify it is to begin again. I don't want to commit myself, and I know the court is not asking us to do it, but I don't want to commit myself to a certain number of challenges. We have 20, and I will do the best I can under the situation.

THE COURT: Okay. I will ask each defendant's attorney to exercise his challenges and I will keep score on it. I just asked, are you going to consult with one another and pool and have 40 between you or each one exercise independently?

MR. KARCESKI: I think we will exercise our independent right to challenge.

THE COURT: Then don't confer with one another during the selection. Do it independently. You cannot.

MR. KARCESKI: I don't think there is anything that forbids us from speaking—

THE COURT: I am instructing you, you get 20 challenges, and you get 20 challenges. Let's not play this game of saying you will exercise it independently, but yet you want to confer on it.

MR. KARCESKI: I note my objection. I will note my inability to comment on the court's ruling at this point.

THE COURT: Go ahead.

MR. LYONS [Counsel for Clark]: I take exception to it.

Later during the course of the juror examination, defense counsel again complained that they had not been allowed to confer with each other:

THE COURT: This is the first time I have been in trial where the defense counsel haven't agreed to—perfectly all right to confer together, but you all don't want to do that. I don't see what difference it makes. You had 20 challenges, and you could confer. It doesn't make any difference whether he takes 30 and you take 10 or not.

You each insisted on the 20, and if you do that, you will bite the spike—

MR. KARCESKI: Your Honor—

THE COURT: I am not going to argue about it.

MR. KARCESKI: The reason why I take 20 or we pool it, if I exhaust my challenges, I may have certain remedies in the appellate court that I don't have if I don't exhaust all my challenges. So, suppose we took 38, who are we to say we exhausted the challenges when it comes to whatever argument is left, and if the court rules, I think we did make an exception early on about a challenge for cause—maybe something else that escapes me for the moment. So, I think each defendant is entitled to 20, and that is why I requested it on behalf of Mr. Hemphill. And I continue my request for mistrial, Your Honor.

THE COURT: I will deny your request, both of you.

The jury was selected,[2] and appellant was tried and convicted of possession of heroin. The court imposed a sentence of three years imprisonment, all but one year suspended, and three years supervised probation to commence upon release. Clark appealed to the Court of Special Appeals and raised the sole issue of whether the court erred in refusing to allow counsel for Clark and for his co-defendant to confer. The intermediate court, in an unreported *per curiam* opinion, affirmed the trial court's judgment. We issued our writ of certiorari to consider the important question presented.

Appellant contends that fundamental fairness and due process dictate that co-defendants who have been forced to accept the disadvantage of a joint trial may not be deprived of one of its few benefits—consultation between counsel for co-defendants on matters of trial strategy. He argues that the manner in which peremptory challenges are exercised is an important trial strategy, which is grounded in the "un-

---

**2.** Contrary to the opinion of the Court of Special Appeals, the record discloses that each defendant exhausted his twenty peremptory strikes, while the State only used eight peremptory strikes.

fettered" right of the defendant to his peremptory challenges. The State rejoins that because there was no statute or court rule which prohibited the trial court's conduct, the court acted within its sound discretion. The State also maintains that appellant's right to exercise his peremptory challenges was not impaired so as to deny him a fair trial.

In *State v. Tichnell,* 306 Md. 428, 509 A.2d 1179 (1986), we said,

> Under the Sixth Amendment to the Constitution of the United States the accused in all criminal cases is entitled "to have the Assistance of Counsel for his defense." *Argersinger v. Hamlin,* 407 U.S. 25, 27, 92 S.Ct. 2006 [2007], 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 339, 83 S.Ct. 792 [793], 9 L.Ed.2d 799 (1963). There is no distinction between the right to counsel guaranteed by the Sixth Amendment and Art. 21 of the Maryland Declaration of Rights which declares " 'That in all criminal prosecutions, every man hath a right . . . to be allowed counsel. . . .' " *Harris v. State,* 303 Md. 685, 695 n. 3, 496 A.2d 1074 (1985).

> In *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441 [1449 n. 14], 25 L.Ed.2d 763 (1970), the Supreme Court said "that the right to counsel is the right to the effective assistance of counsel."

Our analysis in *Tichnell* was based upon the charge that counsel's performance did not measure up to the proper standard of effective representation. In the case before us today, however, we are concerned with restrictions imposed by the court which are alleged to impede counsel in his effort to effectively assist the defendant. As the Supreme Court stated in *Herring v. New York,* 422 U.S. 853, 857–58, 95 S.Ct. 2550, 2553, 45 L.Ed. 593, 598 (1975):

> The right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the tradition of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments. . . . The right to the assistance

of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.

A fundamental characteristic of our system of justice is the guarantee that neither the court nor the state will impede counsel in his efforts to render effective assistance to the defendant. The Supreme Court has pointed out on numerous occasions that where counsel's effectiveness is impaired by action of the court or the state placing a marked restraint upon counsel's tactical or strategic judgment, the defendant's right to assistance of counsel has been violated. In *Herring, supra,* for example, the Court, recognizing that "closing argument is a basic element of the adversary process in criminal trials," held that a statute which denies such argument violates the sixth amendment right to assistance of counsel. 422 U.S. at 858, 95 S.Ct. at 2553, 45 L.Ed. at 598. *See also Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Court held that where a defendant was deprived of his right to consult with his counsel during an overnight recess, defendant was denied his right to effective assistance of counsel. *See generally* Annot., 5 A.L.R.3d 1360 (1966) (discussing state court decisions on scope of accused's right to communicate with his attorney). In *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the Supreme Court held that a Tennessee statute which required that a defendant "desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case" was in violation of the sixth amendment right to the assistance of counsel. The Court stated that:

Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make the choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case.

*Id.* at 612, 92 S.Ct. at 1895, 32 L.Ed.2d at 364. *See also Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (holding that a statute which allowed a defendant to make an unsworn statement to the jury, but denied counsel the right to question the witness on direct examination denied the defendant the right to assistance of counsel). Justice O'Connor recounted the principle set forth by these cases in *Strickland v. Washington, supra,* where she stated, "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692.

We believe that in this case, the defendant's right to effective assistance of counsel was violated by the action of the trial court. As we see it, effective representation means representation in which the attorney is unhindered in the lawful pursuit for knowledge which might benefit the client. The trial judge's ruling here in effect tied counsel's hands and foreclosed him from pursuing a valuable source of information in a consolidated trial—the co-defendant's attorney. The State disagrees, arguing that the defendant has no right to the effective assistance of his co-defendant's counsel. The point is, however, that the trial judge's action adversely impacted upon the effectiveness of the defendant's attorney by placing an impediment on *his* assistance.

Moreover, in a joint trial, counsel must be permitted to coordinate his defense with co-counsel. If not, the attorneys are forced to work blindly of each other, and they may find themselves working at cross-purposes. Thus, the court's denial of communication thwarts the effective assistance of counsel.

In the case at bar, however, the proscription upon communication went further than merely stymieing the defendant's attorney's judgment as to a trial strategy; it impaired counsel's ability to make a considered judgment as to when to exercise the defendant's peremptory challenges. A peremptory challenge, as its name denotes, is a final, unques-

tioned challenge to a prospective juror. Although the Supreme Court recently held in *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) that the peremptory challenge is not "peremptory" where there is a *prima facie* showing that the *prosecution* has used the challenge for purposeful discrimination on the basis of race, the Court nevertheless recognized that the peremptory challenge remains an important part of our system of justice. *Id.* at ——, 106 S.Ct. at 1722, 90 L.Ed.2d at 86. The trial judge's action in this case clearly impaired that right by imposing the restriction upon the defendant's counsel. Although one attorney might have been aware of sound reasons to strike a particular juror, those reasons might have become much less sound when viewed in light of co-counsel's trial strategy. Thus, when the trial judge forbade counsel to communicate, he deprived counsel of valuable information and advice concerning the exercise of the peremptory challenges.

Conversely, the judge's proscription upon communication also placed an impediment upon counsel's judgment in determining whether to object to the State's jury challenges. This error becomes especially acute in light of the Supreme Court's decision in *Batson, supra.* In *Batson*, the Court held that a defendant may establish a *prima facie* case of purposeful discrimination by the prosecution in its exercise of peremptory challenges where the defendant shows that he is a member of a cognizable racial group and that the prosecution has used its peremptories to exclude members of the defendant's race.[3] —— U.S. at ——, 106 S.Ct. at

---

**3.** In *Batson v. Kentucky, supra,* the Supreme Court set forth that among the relevant circumstances the trial court may consider in the determination of whether the defendant has made a *prima facie* case of discrimination are a "pattern" of strikes against jurors of the defendant's race in the particular venire, as well as questions and statements by the prosecution during the voir dire which support the inference of discrimination. "Once the defendant makes a *prima facie* showing, the burden shifts to the state to come forward with a neutral explanation for challenging black jurors." —— U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

1722–23, 90 L.Ed.2d at 86–87 (overruling in part *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). Where the trial judge disallows communication between the co-defendant's attorneys during voir dire, clearly the efficacy with which counsel may identify and object to invidious strikes is impaired. Co-defendants must be allowed to confer as to this aspect of the case.

In spite of these violations of defendant's rights, the State argues that appellant has failed to show that he has been actually prejudiced by the trial judge's action. We do not believe that appellant has the burden of proving prejudice, however. The Supreme Court has stated that where the state deprives the defendant of effective assistance of counsel, constitutional error will be found without the showing of prejudice. *United States v. Cronic,* 466 U.S. 648, 668 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657, 668 & n. 25 (1984); *cf. Strickland v. Washington, supra* (where the Court held that the petitioner is required to show prejudice where asserting ineffective assistance of counsel claim; the Supreme Court also recognized in *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 686, however, that there is no requirement to show prejudice when asserting state interference with assistance of counsel).

Of course, the prosecution, following proper procedure, may show that the prejudice to the defendant was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 709–10 (1969). *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). In the case before us, however, the State has failed

---

The *Batson* Court noted that it expressed no view as to whether the limitation applies to the exercise of peremptories by defense counsel. *Id.* at ——, n. 12, 106 S.Ct. at 1719, n. 12, 90 L.Ed.2d at 82, n. 12. The effect of the Batson opinion was to reject the portion of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), which set forth that the defendant may not make a *prima facie* showing of a violation of the equal protection clause by solely demonstrating the prosecution's purposeful racial discrimination in the defendant's case.

to file a cross-petition alleging harmless error as an issue. We have repeatedly stated that under Maryland Rule 813, where the issue of harmless error is not encompassed within the petition for certiorari or in a cross petition, we will not consider it. *Warrick v. State,* 302 Md. 162, 175 n. 6, 486 A.2d 189, 195 n. 6 (1985); *Coleman v. State,* 281 Md. 538, 547, 380 A.2d 49, 55 (1977); *Dempsey v. State,* 277 Md. 134, 142, 355 A.2d 455, 459 (1976).

Accordingly, we shall reverse.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND FOR A NEW TRIAL.

BALTIMORE CITY TO PAY THE COSTS.