491 A.2d 595

**John D. WALDRON, Jr.**

v.

**STATE of Maryland.**

**No. 853, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 8, 1985.

**690**

Sally C. Chester, Baltimore (Roland Walker and Walker, Rubin & Van Bavel, P.A., Baltimore, on brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. Baltimore, Warren B. Duckett, Jr., State's Atty. and Susan Bayly, Asst. State's Atty. for Anne Arundel County, Annapolis, Md. on brief), for appellee.

Argued before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Appellant, John D. Waldron, Jr., was tried by a jury in the Circuit Court for Anne Arundel County. He was convicted of kidnapping, armed robbery, and use of a handgun in the commission of a crime of violence, and sentenced to a total of twenty-five years imprisonment. Appellant presents the following issues on appeal:

1. Whether the arbitrary curtailment of the cross-examination of a material State's witness with regard to

her motive to lie requires that appellant's conviction be reversed?

2. Whether the admission of irrelevant and highly prejudicial evidence as to collateral matters constituted error by the trial court?

3. Whether the trial court's failure to exercise its discretion to impose sanctions for the State's violation of discovery rules requires appellant's conviction to be reversed?

4. Whether the trial court erroneously admitted appellant's past convictions into evidence?

1.

Appellant alleges that he was denied his constitutional right to confront a witness against him when the trial court arbitrarily restricted his counsel's cross-examination of Margaret Herron with regard to her motive to lie. Herron, a State witness, testified to acts and admissions made by appellant, subsequent to the robbery, while he was visiting Florida.[1]

On July 5, 1983, Richard Spies, the owner of Edgewater Liquors, was accosted by a gunman as he left his establishment to deposit his weekend receipts in a local bank, was placed in an automobile driven by a second gunman, and was thereby transported to an elementary school, where he was robbed. Upon notifying the police, he described one of the gunmen, whom he "knew from the neighborhood", as being between the ages of 28 and 32, 6 feet tall, 275–290 lbs., with a full beard and mustache, close-cropped tightly curled hair and immaculately dressed in a white shirt and dark pants and sunglasses. Prior to the trial, Spies participated in the preparation of a composite drawing and artist sketch of that man. He also selected a 1977 photograph of appellant from among a group of six photographs and

---

1. Margaret Herron was a resident of Florida.

identified appellant as the robber from some surveillance photographs of appellant, taken outside appellant's home shortly after the robbery.[2]

At trial, Spies testified that the robber was 5′ 5″ tall, weighed 290 lbs. and was between 32 and 39 years of age. When identifying appellant, he noted that the robber was fatter, better groomed and had curlier hair than the appellant. At that time, appellant was 5′8″ tall, weighed more than 205 lbs.[3] and did not have tightly curled hair or a beard and mustache.[4]

Herron's testimony was extensive and incriminating. She testified that appellant, whom she had known for about twelve years, arrived in Florida on July 12, 1983 and stayed with her until the end of July. At that time, he "had a lot of money"[5] that he said he got from "... a liquor store holdup" in his neighborhood in Maryland.[6] She related part of a conversation between appellant and Mike Mitchell,[7] from which she learned that Mike Mitchell "did the holdup with Johnny". Herron described two handguns, brought to

---

2. Sgt. Lynn of the Anne Arundel County police department, after viewing the composite drawing, advised Officer McDonald that the drawing looked like the appellant. Officer McDonald then conducted surveillance of appellant's home and took pictures of him, which were subsequently shown to Spies.

3. Appellant testified that on July 5, 1983, he weighed about 205 lbs. and that as of the date of trial, he weighed more.

4. Appellant testified he shaved his beard and mustache off in Florida because he was breaking out in cold sores.

5. The witness testified that appellant gave her about $300 "to help her with her financial affairs and gave Rita Edmonston $4,000 to buy a used car."

6. Ms. Herron said that appellant acknowledged that he knew the person who he had robbed also lived in the neighborhood and that he had made a mistake in letting the person he robbed go free.

7. Mike Mitchell was the driver of the getaway car used in the robbery and at trial was also referred to as Kenny Miscamin.

Florida by Mitchell; the description was consistent with the guns used in the robbery.[8]

Testimony was also given relative to appellant's appearance. Herron said that when appellant arrived in Florida, "[h]e had curly hair and a full beard and a mustache, healthy looking." When appellant left, "he had decided to shave ... just to change his look, his I.D." She testified that appellant's appearance at trial was different in that he no longer had curly hair, had lost 20–30 lbs., and was clean shaven.

Finally, Herron testified as to appellant's use of drugs, marijuana and cocaine. She testified that, "Johnny smoked about two or three jays [9] a day" and used about ¼ ounce of cocaine per day "towards the end";[10] the money to pay for the cocaine came from the robbery;[11] and that when appellant left Florida, he took his drugs with him.

On cross-examination, the following colloquy occurred:

[BY KIRBY—Appellant's Counsel]

Q. Were you involved in the possession of a large amount of marijuana?

MS. BAYLEY (Asst. State's Attorney): Objection, your Honor.

COURT: Overruled.

A. Yes, I was.

Q. How much marijuana?

A. You mean at this time or you mean all times or what?

Q. Well, at any time.

---

**8.** The victim, Richard Spies, testified that during the robbery he observed two guns; appellant had a "large barrel gun" and the driver had a smaller gun, "like a Saturday night special, or something like that."

**9.** A "jay" is a marijuana cigarette.

**10.** She said appellant was using cocaine about once every one or two hours for about ten days.

**11.** Ms. Herron estimated that cocaine cost "about $2,000 per ounce" at that time.

MS. BAYLEY: Objection, Your Honor

COURT: Well ... sustained.

Q. Right around the time of July, the last time ...

A. Johnny's trying to tell you November the 2nd sir. Can I help you out?

Q. Sure.

A. Okay.

Q. Tell us about it.

MS. BAYLEY: Your Honor, I object to November 2nd.

COURT: 1983?

A. Yes, can I tell you about it ...

COURT: 1983? Was it?

A. Yes, can I tell you about it ...

COURT: Alright, I'll sus- ...

A. ... without having a bunch of ...

COURT: No.

A. Okay.

COURT: Sustained.

After inquiring into the witness' criminal history and learning that she had never been convicted counsel inquired:

Q. You were charged with the marijuana?

MS. BAYLEY: Objection, Your Honor.

COURT: Sustained.

Appellant then sought to learn if the State paid her travel expenses to Maryland and where she was residing while here:

Q. Did the State's attorney send you money to come up here and testify?

A. I was ...

MS. BAYLEY: Objection, Your Honor.

A. I was subpoenaed to come up here. I had no choice in the matter. I'm also subpoenaed to tell the truth.

Q. The question was ... the question was ...

MS. BAYLEY: Your Honor, I'm going to object to to the question.

COURT: Sustained.

Q. Were you paid anything to come in here and testify?

A. I was paid no money to come in here to testify, no sir?

Q. And you're staying at your own ... your're staying overnight and you're paying for that, too, is that right?

A. I don't think I have to tell you where I'm staying overnight, do I sir?

COURT: No.

MR. KIRBY: I didn't say where, Your Honor, I just asking who's paying for it.

COURT: It doesn't matter.

MS. BAYLEY: Objection, Your Honor.

COURT: Sustained.

Cross-examination is the vehicle by which the right of confrontation is given substance. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Thus, it is a matter of right, not a privilege. *State v. DeLawder*, 28 Md.App. 212, 344 A.2d 446 (1975). It is "[t]he tool available to each side to test the believability of the testimony...". *State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983). As such, cross-examination may be directed at generally attacking the credibility of witnesses or examining the presence or absence of bias or motivation for testifying. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), *State v. Cox, supra, Johnson and Walters v. State*, 30 Md.App. 512, 352 A.2d 371 (1976). The Supreme Court stated the rule in *Davis v. Alaska, supra,* 415 U.S. at 316, 94 S.Ct. at 1110 when it said:

The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing

possible biases, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony". 3A J. Wigmore Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

Mere accusations of crime or misconduct generally may not be used to impeach a witness unless they are relevant to the credibility of that witness, *Cox v. State, supra,* or they tend to show that a prosecution witness is under pressure to testify favorably for the State. *Johnson and Walters v. State, supra.* No proffer need be made prior to making inquiry, for, although necessarily exploratory, it is presumptively proper:

> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general apply... It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which a jury cannot fairly appraise them.

*Alford v. U.S.,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) (Citations omitted)

 The right of cross-examination is not unlimited. The allowance of questions on cross-examination and the determination of their relevance are normally reserved for the sound discretion of the trial judge and will not normally be disturbed absent an abuse of discretion. *State v. Cox, supra, Kruszewski v. Holz,* 265 Md. 434, 290 A.2d 534

(1972), *Fletcher v. State,* 50 Md.App. 349, 437 A.2d 901 (1981). Nevertheless,

> Where ... the trial judge, as trier of fact and of credibility, limits cross-examination of a witness so as to preclude a demonstration of bias, prejudice or other unworthy motivation on the part of the witness, he prevents the defense from presenting all of the facts, forestalls an adequate basis for assessment of credibility and erodes the purpose of cross-examination ... *Deinhardt v. State,* 29 Md.App. 391 [348 A.2d 286] (1975).

This constitutes a basis for reversal. *Fletcher v. State, supra, Johnson and Walters v. State, supra.* This is especially true when the witness is a "key witness".[12] *See, State v. Cox, supra.*

In the case *sub judice,* appellant was foreclosed from inquiry into whether Herron was under indictment in Florida and the extent to which, if at all, her expenses or housing were paid by the State in return for her testimony. Appellant advises us that the thrust of his questions was to elicit testimony from which it could have been concluded that Herron had reason, from either fear or favor, to testify favorably for the State.

■■■ The test of admissibility of evidence to show possible bias or prejudice or motivation to testify is:

> ... whether the question asked is directed at eliciting from a prosecution witness the fact that he may be under pressure to testify favorably for the State, as when he is under formal accusation, and/or incarceration awaiting trial.

---

**12.** Here, Herron was an important State's witness. Through Herron it was established that appellant had changed his appearance between July and the date of trial. She detailed the fact that his hair was different and that he had lost weight. In addition, through her, appellant's admission to having committed the crime was revealed and a third party was implicated. Although the State produced other evidence, including identification evidence by the prosecuting witness, it is not difficult to see how the case was considerably strengthened by Herron's testimony. Without her testimony, a conviction may not have been obtained.

*Johnson and Walters, supra* 30 Md.App. at 516, 352 A.2d 371. Cross-examination to show coercion should only be allowed where it appears that there is a present possibility of coercion. *Id.* at 517, 352 A.2d 371. Ordinarily, the thrust of the inquiry will be revealed by the question, however, although not required, it may be supplied by proffer. When no proffer is made, the questions must clearly generate the issue—what the examiner is trying to accomplish must be obvious. Thus, in the absence of a proffer, the clarity with which the issue is generated will determine whether the court's restriction of cross-examination constitutes an abuse of discretion.[13] *Rowe v. State,* 62 Md.App. 486, 490 A.2d 278 (1985); *Godwin v. State,* 38 Md.App. 716, 382 A.2d 596, vacated on other grounds, 284 Md. 85, 403 A.2d 785 (1978). This rule is necessary to insure that on appeal, a trial judge's exercise of discretion can be fairly and accurately assessed. *Medley v. State,* 52 Md.App. 225, 231, 448 A.2d 363 (1982).

In the case *sub judice,* no proffer was made and the questions, whether considered singly or as a group, did not so clearly generate the issue of bias so as to render the court's rulings an abuse of discretion. The State argues that the inquiry went to the crime, not to the simple fact of pretrial incarceration or to eliciting from the witness whether she was under pressure to testify favorably for the State in conjunction with pending proceedings against her. In the absence of a proffer, or a clear indication from appellant's counsel as to what he was driving at, the State's argument has merit.

### 2.

The trial court admitted evidence which appellant contends was highly prejudicial and went beyond the scope of

---

**13.** For example, the trial judge's ruling on the question, "You were charged with the marijuana?" was correct since mere accusations of crime or misconduct may not be used to impeach a witness. *State v. Cox,* supra.

proper and fair cross-examination, the cumulative effect of which cast doubt and suspicion on his case. Appellant alleges that the State failed to substantiate the innuendos which it raised on the cross-examination of appellant, thus, denying appellant a fair trial.

At trial, appellant was asked on cross if he had told his former attorney about his alibi witnesses. Although he answered in the affirmative and talked freely about his communications with his attorney, appellant now contends that the inquiry was into a privileged communication and was improper and irrelevant.

The attorney-client privilege is alive and well in Maryland. Md.Code Ann., Courts and Judicial Proceedings Article § 9–108. Only the client may waive the privilege, *Beckette v. State*, 31 Md.App. 85, 355 A.2d 515 (1976), but once the confidential matter has been disclosed and is no longer secret, the privilege disappears. *Harrison v. State*, 276 Md. 122, 345 A.2d 830 (1975). In any event, since appellant did not object to the questioning, the issue has not been preserved for appellate review.[14] Maryland Rule 1085.

Similarly, because appellant did not object to any of the questions, his argument that the State's cross-examination of appellant as to his financial status at the time of his arrest was collateral to the ultimate issue of his guilt is not preserved for appellate review. Maryland Rule 1085.

Conceding that his involvement "with drugs" may be relevant as a possible motive for the armed robbery, appellant, nonetheless, urges that "the manner in which [a]ppellant was asked about hypothetical ulcers in his nose and the presence of marijuana residue in a bag in Rita Edmondston's car as well as the allegations that he had gone to Florida to purchase drugs was intended to cast suspicion on [a]ppellant." Characterizing the questions as "highly prejudicial and irrelevant", unsupported by admissi-

---

**14.** If the issue had been preserved, we would find that appellant waived the privilege. See, *Harrison, supra.*

ble and competent evidence, appellant, relying on *People v. Wells*, 100 Cal. 459, 34 P. 1078 (1893), argues that the State's cross-examination, in the form and on the subjects as to which complaint is made, was improperly allowed. We disagree.

*Wells, supra*, prohibits the cross-examination of a witness by asking questions known to be "improper and unjustifiable". Appellant conceded in the colloquy on his motion for mistrial that the basis for the State's questions was the offense report. He does not suggest that the questions asked by the State were asked with knowledge of falsity or impropriety, rather he complains about their relevancy. We find *Wells, supra* inapposite. The situation presented here is not one in which the State asked questions known to be "improper and wholly unjustifiable." Furthermore, we are satisfied that, not only were the questions proper subjects of cross-examination, but the examination itself was proper. *State v. Cox, supra, DeLilly v. State*, 11 Md.App. 676, 276 A.2d 417 (1971).

3.

 The next argument advanced by appellant is that the trial court erred in refusing to impose sanctions upon the State for failure to disclose surveillance photographs. Surveillance photographs were admitted into evidence over appellant's objection. Initially, the objection was that "although timely requested, the State failed to provide him with access to such pictures prior to trial." Pursuant to that objection, appellant sought either exclusion of the photographs or the opportunity to orally move to suppress them when they were offered for admission into evidence. Appellant contends that the trial judge denied his request to make an oral motion to suppress; the record reflects otherwise:

> MR. KIRBY: ... if that's the case, Your Honor, I didn't file specifically and I had my reasons for not even filing a motion to suppress, but I think that I would ask that perhaps if there's anything ... if it comes

into a close issue of being tainted, I would ask you to allow me to at least orally have a motion to suppress aside from the jury, notwithstanding the fact that I have one in writing.

MS. BAYLEY: Your Honor, I don't understand.

COURT: Well, when they're offered he can make a motion to suppress them.

MS. BAYLEY: Your Honor, my understanding is that once the trial has started, his mandatory motions cannot be made.

COURT: Well, it's just a question of whether you admit them, or not. It's not really a motion to suppress. It's whether they're admissible. That would be based on the discovery.

MR. KIRBY: Thank you, Your Honor.

Later, when the photographs were offered into evidence, appellant objected to two of them on the grounds that they were prejudicial. Appellant did not request a suppression hearing out of the presence of the jury, nor did he enter a general objection to the admissibility of all of the photographs. Therefore, with the exception of the two photographs to which he objected, this issue has not been preserved for review. Maryland Rule 1085, *Forrester v. State*, 224 Md. 337, 167 A.2d 878 (1961), *Townsend v. State*, 11 Md.App. 487, 275 A.2d 191 (1971). Nor are we able to review the photographs as to which an objection was made. We have no way of knowing for sure which two photographs were objected to since appellant did not identify them by reference to their identification number. We have reviewed all photographs, however, and we do not discern any error in their admission.

4.

Appellant's final contention is that his criminal record was erroneously admitted into evidence. Appellant did not object to the use of the convictions at trial. His only objection was to the form of the question. The issue has not been preserved. Maryland Rule 1085. See also *Jack-*

![black bar]

*son v. State,* 288 Md. 191, 416 A.2d 278 (1980) and *von Lusch v. State,* 279 Md. 255, 368 A.2d 468 (1977).

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY APPELLANT.