565 A.2d 371

**Leland Ronald JORGENSEN**

v.

**STATE of Maryland.**

**No. 205, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 3, 1989.

Francis J. Collins (Zukerberg & Kahn, P.A., on the brief), Baltimore, for appellant.

Diane Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Lawrence A. Dorsey, Jr., State's Atty. for Frederick County, Frederick, on the brief), for appellee.

Argued before MOYLAN, BISHOP and GARRITY, JJ.

## STATEMENT OF THE CASE

BISHOP, Judge.

On March 25, 1988, appellant, Leland Ronald Jorgensen, and his brother, Paul, were charged in the District Court for Frederick County with assault and battery. Appellant requested a jury trial, and his case was transferred to the Circuit Court for Frederick County. The appellant filed a Motion to Dismiss claiming collateral estoppel based on his brother's acquittal in the District Court. The motion was denied. A jury convicted appellant of battery and he was sentenced to ninety days incarceration, all of which was suspended in favor of two years supervised probation. Appellant's Motion for New Trial was denied and this appeal followed.

## ISSUES

Appellant presents the following issues for review:

Whether the trial judge abused his discretion by restricting the cross-examination and impeachment of the chief prosecution witness;

Whether the defendant's conviction should be set aside because the state failed to disclose the existence of a prior statement by the main prosecution witness;

Whether the trial judge abused his discretion by failing to grant a new trial based on newly discovered evidence; and,

Whether the trial court erred in denying defendant's Motion to Dismiss based on grounds of collateral estoppel.

Since our disposition of this case is based on the first issue, we will not address the other issues.

## STATEMENT OF FACTS

Shortly after 1:00 p.m. on March 24, 1988, Deputy Jay Godlove (Godlove) of the Frederick County Sheriff's Department attempted to serve process on Leland Ronald Jorgensen (Ron). Godlove, with the permission of his supervisor, contacted the law office shared by Ron and his brother, Paul, and arranged for an appointment as a prospective client. On the day of the appointment, Godlove appeared at the law office in plain clothes, posing as a potential client. Upon being escorted into a private office, Godlove identified himself, served the papers on Ron, and then left. Shortly after Godlove left the law office, Ron and Paul pursued the Deputy on the street. It is at this point the stories diverge. The Jorgensens testified that they neither touched Godlove nor gave him reason to feel threatened. Godlove testified that as he was walking up the street he turned and saw Ron and his brother running toward him. Godlove further testified that Ron grabbed the Deputy's right arm and Paul grabbed his left arm. Ron then grabbed Godlove's briefcase from under his arm. Godlove testified that he identified himself a second time and grabbed back his briefcase. Godlove then removed his handgun from its holster, brought it up, and told the brother's "get back or I'll shoot." At this time Godlove produced his badge, and then he and Ron walked up the street to Godlove's cruiser. Godlove drove away without arresting Ron or Paul.

Ron told a different story. He testified that when he walked up to Godlove and asked for identification, Godlove pulled out a revolver. Additionally, Ron stated "go ahead and shoot me" at which time Paul arrived and tried to "calm the situation."

Miriam Rice, a neighbor of the Jorgensen's, testified that she heard a commotion and looked outside of her house. She stated that she did not see Godlove's briefcase being taken but did see Ron push or shove the officer.

Ron contends here, as he argued in opening statement, that immediately after the incident his brother, Paul, called the Sheriff's Department to verify Godlove's employment. After learning that Godlove was a Deputy, Paul discussed with Captain Doxzen the possibility of filing a complaint. On March 25, 1988, the next day, Paul called Corporal Breed, Godlove's immediate supervisor, and made plans to visit the Sheriff's office to file the complaint. Later in the day, Godlove, assisted by Corporal Breed, swore out warrants for the arrest of Paul and Ron.[1] The court did not permit Ron's foregoing contentions to be admitted into evidence.

At Ron's trial, defense counsel was prohibited from either cross-examining or impeaching Godlove based upon the alleged bias. In addition, Ron's defense counsel was not provided with a transcribed statement by Godlove made at the Sheriff's Department regarding the alleged assault and battery.

## DISCUSSION

The appellant argues that the trial court committed reversible error by restricting defense counsel's cross-examination and impeachment of the main prosecution witness, Jay Godlove. The State contends that the issue concerning the trial court's refusal to allow the cross-examination and impeachment was not properly preserved for appeal because no proffer was made at trial. The State further posits that even if the issue were properly preserved, the evidence which the defense counsel tried to elicit from the main prosecution witness was not relevant to the assault and battery charges. In any case, the State argues, the error was harmless because the evidence was put before the jury anyway, in opening statements and from a comment made by a defense witness while testifying.

---

1. Paul was acquitted in the District Court upon a finding that no battery had occurred.

" 'It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him.' " *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968) quoting from *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Unduly restricting cross-examination is an abuse of discretion and warrants reversal of a conviction and remand the case for a new trial. *Brown v. State,* 74 Md.App. 414, 421–22, 538 A.2d 317, 320–21 (1988). However, Maryland courts have consistently held that the exclusion of evidence is ordinarily not preserved for appellate review absent a formal proffer of what the contents and relevance of the excluded testimony would have been. *Grandison v. State,* 305 Md. 685, 506 A.2d 580, *cert. denied,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986). The Court in *Grandison* held:

> In the absence of a proffer, we are unable to determine whether this ruling prejudiced Grandison's case. As Judge Eldridge pointed out in his concurring opinion in *Johnson v. State,* 303 Md. 487, 495 A.2d 1, *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1985):
>
> "Nevertheless, assuming that the issue can be preserved by a pre-trial motion, it is settled that whenever one is complaining about a trial court's refusal to admit certain testimony, it is necessary that there be a proffer of what the evidence would have been. *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984); *Hooton v. Kenneth B. Mumaw P. & H. Co.,* 271 Md. 565, 571, 318 A.2d 514 (1974); *Keys v. Keys,* 251 Md. 247, 250, 247 A.2d 282 (1968)."

305 Md. at 742, 506 A.2d 580. This rule insures that on appeal, a trial judge's exercise of discretion can be fairly and acurately assessed. *Waldron v. State,* 62 Md.App. 686, 698, 491 A.2d 595, *cert. denied,* 304 Md. 97, 497 A.2d 819 (1985). Proffer is not absolutely required. In *Waldron* we said:

Ordinarily, the thrust of the inquiry will be revealed by the question, however, although not required, it may be supplied by proffer. When no proffer is made, the questions must clearly generate the issue-what the examiner is trying to accomplish must be obvious. Thus, in the absence of a proffer, the clarity with which the issue is generated will determine whether the court's restriction of cross-examination constitutes an abuse of discretion. (Footnote omitted.)

62 Md.App. at 698, 491 A.2d 595.

█ In the case *sub judice,* the trial court curtailed any probing by the defense counsel into the fact that the warrants for arrest were not issued until after an administrative complaint had been lodged against Godlove. Although defense counsel did not proffer any evidence to show the relevance of the inquiry, we hold that no such proffer was necessary. The questions to which objections were sustained, clearly generated the issue—what the examiner was trying to accomplish was obvious. The following colloquy took place during the cross-examination of Godlove:

"Q: Isn't it true that you didn't decide to get a warrant against this defendant until the next....

Ms. Hershey: Objection.

Q: Can I finish?

The Court: Let her finish the question.

Q: ... until the next day after you learned that Paul was filing a complaint against....

Ms. Hershey: Objection.

The Court: Objection sustained. Strike the question.

Q: At what point did you decide to get this warrant?

Ms. Hershey: Objection.

The Court: Objection sustained."

In addition, during the direct examination of Paul Jorgensen the following exchange occurred:

"Q: Did you or did someone at your direction, in fact, call the police?

A:   Well, my wife, Debbie, she went down to call the police and I understand there was a neighbor that also called the police.   I returned back to my office after all this had happened and I also called the Sheriff's Department immediately and I confirmed that Deputy ...

Ms. Hershey:  Objection.

The Court:  Objection sustained.

Q:   Did there come a time when you came into the Sheriff's Department?

A:   The next day, yes.

Ms. Hershey:  Objection.

The Court:  Objection sustained.   Strike the answer.

Q:   When did you learn that your brother was being arrested for assault and battery on Mr. Godlove?

A:   After I had been arrested the next day after I filed a complaint against the uh ...

Ms. Hershey:  Objection, move to strike.

The Court:  Objection sustained.   Strike the answer."

These discussions were preceded by the defense counsel's opening statement which defined Ron's defense to the charges of assault and battery:

Now, this is what this case is about and you'll find out that the officer did not arrest him then and there on the spot as an officer very likely would have done with assault and battery.   The officer waited until the next day after there was a complaint about this behavior of pulling this gun on these two unarmed citizens.   And then he went and got this warrant for assault and battery against this defendant and against his brother.

We hold that the issue was clearly presented by the questions and the opening statement, therefore, no proffer was necessary to preserve the issue for our review.

■   Next, we consider the State's contention that the issue of when the warrants were issued is not relevant. This court has held that "[m]atters which affect the interest, bias, hostility, or motives of a witness ... are always relevant; and, therefore, extrinsic evidence is admissible in

order to impeach a witness on these grounds." *Biggs v. State,* 56 Md.App. 638, 645–46, 468 A.2d 669 (1983) *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984). This court went on to state that "... a witness' bias is perfectly competent to indicate that the witness has a strong motivation to lie." *Id.* And, in *Rowe v. State,* 62 Md.App. 486, 495, 490 A.2d 278 (1985) we held that a witness' bias is always relevant in that it may affect the weight of his testimony. In the case *sub judice* the State does not seem to contest the relevance of bias, but argues instead that allegations of police bias cannot be general, but must focus on specific personal bias regarding the particular case in order to be relevant. The State cites *Apple v. State,* 190 Md. 661, 59 A.2d 509, (1948), and the facts of *Rowe v. State, supra.* These cases are inapposite. In *Apple* the Court affirmed a trial court's refusal to allow cross-examination of a police officer. The officer witnessed the assault, in a picket line, for which the defendant was being tried. On cross-examination the officer was asked if the picketed employer, "was feeding the police, giving them sandwiches and coffee down on the picket line." 190 Md. at 665, 59 A.2d 509. In affirming the trial court's ruling, the Court held that "[t]he question and the proffer were not directed to any food or drink received by the officer who was testifying, but were general in their nature, and could have had no special bearing on the credibility or bias of this particular officer." Id.

In *Rowe, supra,* the investigating officer in a homicide case testified in a manner which pointed out certain inconsistencies in the defendant's alibi witness' stories. The defense counsel, attempting to impeach the officer's credibility by showing bias, asked if "... policemen, you in particular, receive promotions for closing out major homicides" and then asked "[i]s it fair to say ... that you want this jury to convict Joe Bill Rowe?" 62 Md.App. at 494–95, 490 A.2d 278. The State objected to both questions and the Court sustained both objections. This Court affirmed the trial judge by holding:

As in *Apple,* the 'promotion' question was general in nature, could have had no special bearing on the credibility or bias of the witness and seemingly was proposed to create prejudice against police in general. Policemen, we assume, like other employees, secure advancement through the performance of good work. There is nothing inherently inappropriate in that universally accepted practice. The question as articulated by defense counsel did not focus upon any specific personal bias on the part of Detective Tankersley which might have been motivated by a promise of promotion for closing out this particular case.

Id. at 497, 490 A.2d 278. The cross-examination of Godlove focused on a personal bias on his part. The questions were specific and did have special bearing on his credibility or bias. Ron's defense to the charges was that no touching or assault had ever taken place. In order to establish this defense Ron attempted to demonstrate that no injury had occurred to Godlove and, most importantly, that Godlove had fabricated the battery charge in order to be on the offensive as a result of the administrative complaint being filed against him by Ron's brother. A conviction for assault and battery of the persons complaining about his conduct would aid Godlove in his defense against the administrative complaint. We hold that the inquiry into the timing of the administrative complaint and the issuance of the arrest warrants could indicate an ulterior motive or bias, on Godlove's part, and is relevant to the defense of Ron.

■ Finally, the State urges us to find the trial judge's restriction of the defense's cross-examination to be harmless error. In support of this argument the State points out the following colloquy between Ron and the prosecutor:

Q: In addition, all the officer's testimony is not true, is that correct, with regards to the physical contact between the two of you?

A: I think he made it up.

Q: That's my question. That's your belief that he made it up?

A: Yes, I think he made it up in response to the complaint that my brother made the next day.

Q: Your Honor, ... Mr. Jorgensen, with reference to the drawing of the gun, then it's your testimony that neither you nor your brother did anything in the way of physical touching the deputy, that he was in fact walking down the street, leaving the office building, when you came out, and that without any kind of contact he drew the gun. That's your testimony?

A: Yeah, that's my testimony.

Furthermore, the State argues that defense counsel discussed the bias issue in his opening statement. Because the jury was apprised of this evidence and still convicted Ron, the State argues that any error would be harmless.

An opening statement is not evidence. *White v. State,* 11 Md.App. 423, 274 A.2d 671 (1971). In *Johnson and Walters v. State,* 30 Md.App. 512, 520, 352 A.2d 371 (1976), *cert. denied,* 278 Md. 738 (1976), this court held that if sufficient evidence on the subject at issue is otherwise admitted, the prejudice of an erroneous ruling on cross-examination may be overcome. We then held that undue restriction on the right to cross-examination was not harmless despite the fact that the same information was received into evidence in a different context. *Id.* at 521, 352 A.2d 371. We hold that the incidental reference to the complaint made in Ron's testimony and the reference in opening statement [2] were not sufficient to overcome the prejudice which resulted from the trial court's erroneous limitation of cross-examination. Additionally, we note that the defense counsel was barred from mentioning Godlove's motives in the closing argument. The trial court's refusal to permit this inquiry into bias effectively prevented the jury from considering Ron's explanation for Godlove's damaging testimony. The erroneous

---

**2.** Clearly, these do not carry the persuasive impact of the witness himself admitting that which appellant was attempting to prove.

restriction of cross-examination was not harmless, and we reverse.

## CONCLUSION

We hold that the trial court erred in limiting the cross-examination of Deputy Godlove. The issue was preserved for our review because the questions clearly revealed the thrust of the inquiry. The bias or ulterior motive which appellant attempted to show was relevant to the guilt or innocence of appellant. The error was not harmless.

JUDGMENT REVERSED.

COSTS TO BE PAID BY FREDERICK COUNTY.