857 A.2d 148

**BALTIMORE CITY POLICE DEPARTMENT**

v.

**STATE of Maryland.**

**No. 909, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 2, 2004.

Peter Saar, Baltimore, for Appellant.

Arthur A. Delano, Jr. (Stephen E. Harris, Public Defender on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., KRAUSER, BARBERA, JJ.

BARBERA, Judge.

This case involves a pre-trial order of the Circuit Court for Baltimore City directing that certain portions of a law enforcement officer's confidential personnel file be disclosed to a defendant in a criminal case. As we shall discuss, central to our disposition of this appeal is that the court ordered discovery of this confidential information without first conducting an

*in camera* review of the officer's personnel file to ascertain whether it contains matters to which the defense is entitled.

This appeal was precipitated by a motion, filed by the Baltimore City Police Department ("Department"), to quash a subpoena filed by counsel for Tevonne Clark, one of two defendants in the underlying criminal case and appellee here. The subpoena sought the records of the Department's Internal Affairs Division ("IAD") concerning Detective Michael Dressel. Detective Dressel had participated in the arrest of appellee and was scheduled to testify at appellee's trial on drug charges that, in part, arose out of the arrest.

Appellee sought disclosure of Detective Dressel's personnel record because it contained information concerning an accusation by one or more officers that Dressel had been dishonest in an unrelated matter. Appellee sought the information for purposes of cross-examination of the officer at trial.

The circuit court granted in part and denied in part the Department's motion to quash. The court did not review Detective Dressel's IAD file, either alone or with counsel. Nevertheless, the court ordered the Department to disclose to appellee the portions of the IAD file that contained "any statement made by a named police witness that he [Officer Dressel] engaged [in dishonesty] in the past." The Department has appealed, challenging that order.[1]

Two days after we heard oral argument in the case, we issued an order reversing the circuit court's order and remanding the case to that court with directions that it "enter orders (1) granting the 'Motion to Quash and/or for Protective Order' . . ., and (2) quashing the subpoena duces tecum for the Department's disciplinary records." We further ordered, however, that our disposition be without prejudice to the rights of appellee and/or his co-defendant to seek appropriate relief from the circuit court pursuant to two of our prior decisions, *Blades v. Woods,* 107 Md.App. 178, 667 A.2d 917

---

1. The court's order is an appealable order. *See Baltimore City Dep't of Soc. Svcs. v. Stein,* 328 Md. 1, 20–21, 612 A.2d 880 (1992).

(1995), and *Reynolds v. State*, 98 Md.App. 348, 633 A.2d 455 (1993). We stated that the reasons for our order would be explained in an opinion to follow. This is that opinion.

## BACKGROUND

The parties stipulated to a joint statement of the case pursuant to Maryland Rule 8–413(b).[2] The statement reads as follows:

This matter arises from the criminal trials of co-Defendants Mr. Tevonne Clark and Lynwood Smith, criminal case nos. 102113037 and 102113038. This matter is currently being heard before [ ] the Circuit Court for Baltimore City.

On June 12, 2003, a suppression hearing was held in the matter. During the hearing [Assistant State's Attorney ("ASA") ] Rita Wisthoff–Ito moved to limit the examination of Baltimore Police Detective Michael Dressel, so as to exclude inquiries into an Internal Affairs Division (IAD) investigation of Det. Dressel.

Importantly, the IAD investigation was not related to the underlying facts of the Messrs. Smith and Clark's cases. Rather, the IAD investigation involved allegations of dishonesty unrelated to the instant case.

Counsel for Mr. Clark, Assistant [Public Defender] Margaret Teahan, opposed the ASA Wisthoff–Ito's request, and argued in favor of access. The very next day, Ms. Teahan served a subpoena duces tecum upon the Baltimore Police Department (BPD) for the production of all IAD files relating to Detective Dressel. (Exh. 1). Soon thereafter, counsel for the BPD, Peter Saar, appeared and moved to quash the subpoena duces tecum. [Ms. Teahan] has since

---

**2.** Maryland Rule 8–413(b) provides, in pertinent part:

If the parties agree that the questions presented by an appeal can be determined without an examination of all the pleadings and evidence, they may sign and, upon approval by the lower court, file a statement showing how the questions arose and were decided, and setting forth only those facts or allegations that are essential to a decision of the questions.

left the Baltimore City Public Defender's Office, and her cases have been assumed by Daniel O'Connell, Assistant Public Defender.

Ruling from the bench, [the court] denied the motion to quash and ordered the production and disclosure of all IAD files relating to Det. Dressel that contained sustained findings of misconduct. In addition thereto, [the court] also ordered the production and disclosure of any IAD files containing allegations of dishonesty. In support of his decision, [the court] cited *Mulligan v. State,* 18 Md.App. 588, 308 A.2d 418 (1973); *Robinson v. State,* 354 Md. 287, 730 A.2d 181 (1999); *Jorgensen v. State,* 80 Md.App. 595, 565 A.2d 371 (1989); *Faulk v. State's Atty. for Harford Cnty.,* 299 Md. 493, 474 A.2d 880 (1984); *Hammen v. BCPD,* 373 Md. 440, 818 A.2d 1125 (2003), and *Prince George's County, Maryland v. The Washington Post Co.,* 149 Md.App. 289, 815 A.2d 859 (2003).

The record also contains the transcripts of the two hearings at which this matter was discussed, and from which we glean the following additional information.[3] On the occasion of its initial order, the court directed the Department to disclose to defense counsel "whatever statement any police officer made about [Detective Dressel]." The parties appeared before the court the following day to discuss the Department's intended appeal and its effect upon the proceedings in the underlying criminal case. At that time, the court restated its earlier ruling, adding some clarification of it:

> After hearing arguments on defendant Clark's subpoena duces tecum, pursuant to Maryland [ ] Rule 4–264 for tangible evidence before trial, and 4–265 for evidence at trial, and the motion for protective order filed by the

---

**3.** The transcripts of these hearings were supplied to us by the parties. Although this is an expedited appeal, we are not precluded from considering information in the record but not included in the parties' joint statement of the case. *See* Md. Rule 8–413(b) ("The appellate court may ... direct the lower court clerk to transmit all or part of the balance of the record in the lower court as a supplement to the record on appeal.").

Baltimore Police Department, the Court grants said motion for protective order in part, limiting access to the IAD files with respect to ... Michael Dressel, except that any statement made by a Baltimore City police officer that Officer Dressel engaged in dishonesty in a now completed investigation in which Officer Dressel has been exonerated shall [be] the subject of the subpoena, and that the Court relied on Mulligan versus State 18 Md.App. 588 [308 A.2d 418] from 1973 as to the scope of cross-examination as it relates to whether the subpoenaed information is material.

In its written order filed later that day, the court stated its ruling in slightly broader terms:

IT IS HEREBY ORDERED this 13th day of June, 2003, by the Circuit Court of Baltimore City that the Motion is GRANTED IN PART limiting access to IAD files with respect to Michael Dressel, except any statement made by a named police witness that he engaged [in dishonesty] in the past, shall be disclosed by IAD to Assistant Public Defender, Margaret Teahan, with a copy forwarded to Assistant State's Attorney, Rita Wisthoff–Ito.

From that order, this appeal was noted.

### DISCUSSION

### I.

Appellee's subpoena duces tecum, filed pursuant to Maryland Rules 4–264 and 4–265, sought disclosure before appellee's criminal trial of records that have been made confidential by statute, specifically Maryland's Public Information Act ("PIA" or "Act"), Maryland Code (1984, 1999 Repl.Vol., 2003 Supp.), §§ 10–611 et seq. of the State Government Article ("SG"). Our analysis of the court's action on the Department's motion to quash this subpoena begins with our review of the pertinent provisions of the PIA.

The PIA protects certain public records from disclosure. "Public record" is defined in the Act as including "the original or any copy of any documentary material that: (i) is made by

a unit or instrumentality of the State government or of a political subdivision." SG § 10–611(g)(1). The parties do not dispute that the Department is a unit or instrumentality of the State such that its records come within the purview of the PIA. *See Mayor & City Council of Baltimore v. Maryland Comm. Against the Gun Ban,* 329 Md. 78, 81, 617 A.2d 1040 (1993) (stating that records created by the Internal Investigation Division of the Baltimore City Police Department are covered by the PIA).

Personnel records are included among those documentary materials that qualify as public records under the Act. Yet, personnel records are exempt from disclosure under SG § 10–616 of the Act. Specifically, SG § 10–616(a) declares: "Unless otherwise provided by law, a custodian shall deny inspection of a public record, as provided in this section." And subsection (i) provides: "(1) Subject to paragraph (2) of this subsection [, which permits disclosure to the person in interest, i.e., the employee or an elected or appointed official who supervises the employee's work], a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information." The purpose of treating personnel records as confidential is " 'to preserve the privacy of personal information about a public employee that is accumulated during his or her employment.' " 78 Op. Att'y Gen. 291, 293 (1993) (citation omitted).

█ The phrase "personnel record" is not itself defined in the Act. The Court of Appeals has said, however, that "the language of subsection (i) [of § 10–616] discloses what type of documents the Legislature considered to be personnel records." *Kirwan v. The Diamondback,* 352 Md. 74, 82, 721 A.2d 196 (1998). And, "[a]lthough this list was probably not intended to be exhaustive, it does reflect a legislative intent that 'personnel records' mean those documents that directly pertain to employment and an employee's ability to perform a job." *Id.* at 82–83, 721 A.2d 196.

█ The Department asserts that IAD's file concerning its investigation into allegations of dishonesty on the part of

Detective Dressel qualifies as a personnel record, and appellee does not contend otherwise. Guided by *Kirwan*, we see no reason to disagree with the Department's position on this point.

In addition to the confidentiality protections afforded an employee's personnel record under SG § 10–616, the Department directs us to the protections afforded law enforcement officers who have been interrogated or investigated by their departments under the Law Enforcement Officers' Bill of Rights ("LEOBR"). But, as we discuss, *infra*, the protections afforded an officer under these provisions have been determined by the Court of Appeals to have very little bearing on the discoverability question we address in the case at bar.[4]

---

4. The LEOBR provisions to which the Department refers are found in Maryland Code (2003), § 3–104(n),(*o*) of the Public Safety Article. Subsection (n) provides:

*Information provided on completion of investigation.* —(1) On completion of an investigation and at least 10 days before a hearing, the law enforcement officer under investigation shall be:

   (i) notified of the name of each witness and of each charge and specification against the law enforcement officer; and

   (ii) provided with a copy of the investigatory file and any exculpatory information, if the law enforcement officer and the law enforcement officer's representative agree to:

1. execute a confidentiality agreement with the law enforcement agency not to disclose any material contained in the investigatory file and exculpatory information for any purpose other than to defend the law enforcement officer; and

2. pay a reasonable charge for the cost of reproducing the material.

(2) The law enforcement agency may exclude from the exculpatory information provided to a law enforcement officer under this subsection:

   (i) the identity of confidential sources;

   (ii) nonexculpatory information; and

   (iii) recommendations as to charges, disposition, or punishment.

Subsection (*o*) reads:

*Adverse material.* —(1) The law enforcement agency may not insert adverse material into a file of the law enforcement officer, except the file of the internal investigation or the intelligence division, unless the law enforcement officer has an opportunity to review, sign, receive a copy of, and comment in writing on the adverse material.

(2) The law enforcement officer may waive the right described in paragraph (1) of this subsection.

## II.

IAD records of the sort at issue here, though made confidential as personnel records by the PIA, are not immune from disclosure to a defendant in a criminal trial. In *Robinson v. State*, 354 Md. 287, 730 A.2d 181 (1999), the Court of Appeals addressed the circumstances under which IAD records are subject to disclosure to a criminal defendant. *Robinson*, while not entirely on point with this case, illuminates the issue before us, so we shall discuss it at some length.

Robinson was tried on charges of assault with intent to murder, armed robbery, and related offenses. At his trial, he sought to review the statements two officers had made to the IAD of the Prince George's County Police Department. These statements concerned the circumstances surrounding a robbery and the officers' subsequent pursuit of the robbers, which led to the arrest of Robinson and his cohort. During the chase, there was an exchange of gunfire between the robbers and the officers. The two officers testified as State's witnesses, and Robinson wanted their statements for purposes of cross-examination.

The issue to be decided by the Court of Appeals was whether Robinson was entitled to the statements as so-called *"Jencks"* or *"Carr/Leonard"* material.[5] After reviewing the

---

5. This doctrine is named for the cases addressing the right of a defendant in a criminal case to disclosure of out-of-court statements made by an important State's witness, prior to cross-examination, for possible impeachment material. *See* 18 U.S.C. § 3500 (2000) (the "Jencks Act"); *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *State v. Leonard*, 290 Md. 295, 429 A.2d 538 (1981), *aff'g* 46 Md.App. 631, 421 A.2d 85 (1980); *Carr v. State*, 284 Md. 455, 460–61, 397 A.2d 606 (1979). In *Jencks*, the Supreme Court held that "the criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at the trial." *Jencks*, 353 U.S. at 672, 77 S.Ct. 1007.

Although neither the General Assembly nor the appellate courts of Maryland have "wholly adopted the Jencks Act and its discovery rules," our "courts have looked to the Act, as well as subsequent analysis and

files *in camera* and determining that they contained no exculpatory material, the trial court refused to give Robinson access to the statements.

Robinson challenged that ruling on appeal, arguing that statements in the possession of the Prince George's County Police Department's IAD are in possession of the State, and are thus discoverable. He also argued that the trial court's review of the statements *in camera* was insufficient because, under the Jencks Act, he should have been afforded an opportunity to inspect the statements. *Robinson,* 354 Md. at 298–99, 730 A.2d 181. The Court of Appeals agreed.

No mention was made in *Robinson* of the privacy protections accorded personnel records under the PIA. The Court did consider, however, whether the confidentiality provisions of the LEOBR (the same provisions as those referred to us by the Department in the case at bar), bear on the question whether the defense in a criminal case is entitled to statements made by an officer pursuant to an IAD investigation. In this regard the Court observed:

> These provisions deal only with the rights of the officer and serve as a protection for them. They do not address, or even purport to address, the due process concerns that are at the heart of the *Jencks/Carr* principle and are critical to the resolution of this case. Indeed, when due process concerns have been involved, the confidentiality of the records have been held to yield to those concerns.

*Id.* at 308, 730 A.2d 181 (citation omitted).

In response to the State's argument that it was not in possession of the IAD records and so could not be made to disclose them under *Jencks,* the *Robinson* Court concluded: "[T]hat a statement may be confidential goes to its discoverability, rather than to who possesses it." *Id.* at 309, 730 A.2d 181. And, because the police are an arm of the prosecution,

---

interpretation of the statute, for guidance in interpreting the reach and ramifications of the *Carr* decision." *Robinson,* 354 Md. at 303, 730 A.2d 181.

records kept by the police are deemed in the possession of the State, regardless of their confidential nature. *Id.* Moreover, and important to the case at bar, "[w]hile confidentiality does go to discoverability, it does not guarantee insulation of the confidential matter from disclosure. *The confidential interest must be balanced, in this context, against the confrontation and due process rights of the defendant [under the Sixth and Fourteenth Amendments]." Id.* (Emphasis supplied).

The *Robinson* Court cited cases from the United States Supreme Court and our Court of Appeals that emphasize the importance of balancing a witness's privacy interests and the criminal defendant's right of confrontation. *See, e.g., Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (weighing a defendant's right of confrontation against the State's interest in maintaining the confidentiality of juvenile records, and striking the balance in favor of the defendant's right of confrontation); *Goldsmith v. State,* 337 Md. 112, 129, 651 A.2d 866 (1995) (recognizing that the "defendant's constitutional rights at trial may outweigh the victim's right to assert a privilege"); *Zaal v. State,* 326 Md. 54, 81–87, 602 A.2d 1247 (1992) (requiring the defendant to demonstrate need for pre-trial disclosure and, if established, requiring the trial court to strike a balance between the victim's privacy interest and the defendant's right to a fair trial).

### III.

We can only assume in the case before us that the trial court concluded that appellee's rights of confrontation and to a fair trial outweighed the privacy interest Detective Dressel had in his personnel records, and for this reason permitted appellee pre-trial discovery of at least a portion of the IAD file concerning Dressel. The trial court may or may not have been correct that appellee is entitled, either before or during trial, to the information the court ordered be disclosed by the Department to appellee.[6]

---

6. The right to discovery of privileged or confidential material is affected not only by what is requested, but also by the timing of the request and

We, however, cannot decide that issue here. What troubles us at this juncture, and what requires that we reverse the court's order on the Department's motion to quash, is that the court failed to employ proper procedure in deciding that appellee was entitled to disclosure of a portion of the IAD file. It is to the scope of this procedure that we now turn.

## IV.

We have said that at issue here is the discoverability *vel non* of a personnel record made confidential by SG § 10–616. The procedure for determining the discoverability of privileged material was outlined in *Reynolds v. State*, 98 Md.App. 348, 367, 633 A.2d 455 (1993).[7]

At issue in *Reynolds* was whether the defendant in a criminal case was entitled to pre-trial inspection of the mental health records of his daughter, the alleged victim of sexual and physical abuse. The defendant wished to ascertain whether those records contained any material useful for cross-examination of the victim. Recognizing that such records are privileged under Maryland Code (1973, 2002 Repl.Vol.), § 9–109 of the Courts and Judicial Proceedings Article, Reynolds argued that he was entitled to expanded *in camera* review of the records under the authority of *Pennsylvania v. Ritchie*, 480

---

the purpose for which the material is sought. *See Goldsmith*, 337 Md. at 121, 651 A.2d 866 (discussing the distinction between the limited pre-trial discovery rights of a criminal defendant, which may or may not outweigh a witness's privilege, and an accused's right to obtain and present exculpatory evidence at trial).

7. Although the IAD records at issue here are made confidential by SG § 10–616, they are not privileged. The distinction between the two was discussed by Chief Judge Murphy, writing for this Court in *Doe v. Maryland Bd. of Soc. Workers*, 154 Md.App. 520, 528, 840 A.2d 744 (citations omitted), *cert. granted*, 381 Md. 324, 849 A.2d 473 (2004):

Information can be confidential and, at the same time, non-privileged. "Privilege is the legal protection given to certain communications and relationships, *i.e.*, attorney-client privilege, doctor-patient privilege, and marital privilege. Confidential is a term used to describe a type of communication or relationship." Privilege statutes must be narrowly construed.

U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and *Zaal v. State,* 326 Md. 54, 602 A.2d 1247 (1992).

Judge Murphy, writing for this Court in *Reynolds,* noted as an initial matter that "[t]he defendant has a due process right to discover and put before the factfinder evidence that might influence the determination of guilt.... The defendant cannot be prohibited from discovering evidence the nondisclosure of which would undermine confidence in the outcome of the trial." 98 Md.App. at 364, 633 A.2d 455 (citing *Ritchie,* 480 U.S. at 56–57, 107 S.Ct. 989). Judge Murphy looked to the test developed in *Hamilton, Superintendent v. Verdow,* 287 Md. 544, 566–67, 414 A.2d 914 (1980), for determining disclosure of materials that are subject to a claim of executive privilege, and concluded that the same approach should be used when material, accorded privileged status by statute, is sought to be discovered. 98 Md.App. at 365–66, 633 A.2d 455.

Documents claimed to be privileged remain " 'presumptively privileged even from *in camera* inspection.' " *Id.* at 365, 633 A.2d 455 (citation omitted). " 'The burden is on the party seeking production to make a preliminary showing that the communications or documents may not be privileged or, in those cases where a weighing approach is appropriate, that there is some necessity for production.' " *Id.* (citation omitted). If the requesting party has failed either to establish that the documents claimed to be privileged are in fact not privileged, or to show a need for documents that are privileged, the court directs that there be no disclosure. *Id.*

If that initial burden has been met by the requesting party, then the court " 'should order an *in camera* inspection. Depending upon the issues and circumstances, the *in camera* inspection may be utilized to determine whether the material is privileged, to sever privileged from non-privileged material if severability is feasible, and to weigh the government's need for confidentiality against the litigant's need for production.' " *Id.* at 365–66, 633 A.2d 455 (citation omitted). So, "[t]here are ... occasions on which the trial judge must make an in camera inspection of [the] records despite the fact that they

contain information about privileged communications." *Id.* at 366, 633 A.2d 455.

With regard to counsel's demand to be present at such *in camera* review, we made clear in *Reynolds* that counsel's presence is not always mandated. Rather, that decision is for the trial court to make: " '[T]he court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality.' " *Id.* (quoting *Zaal*, 326 Md. at 87, 602 A.2d 1247). But,

> "[i]n any case, when the court reviews the records alone, it must approach its task cognizant of the fact that it is not an advocate and, in most instances, will not, and, indeed, cannot be expected, to discern all the nuances or subtleties which may render an innocuous bit of information relevant to the defense. Thus the court's review is not to determine whether, and, if so, what, is 'directly admissible;' rather, it is to exclude from the parties' review material that could not, in anyone's imagination, properly be used in defense or lead to the discovery of usable evidence. Only when the records are not even arguably relevant and usable should the court deny the defendant total access to the records. . . .
>
> The trial court's review should not only be aimed at discovering evidence directly admissible but also that which is usable for impeachment purposes, or that which would lead to such evidence."

*Id.* at 366–67, 602 A.2d 1247 (quoting *Zaal*, 326 Md. at 87–88, 602 A.2d 1247).

> We
>
> call[ed] for a procedure that separates information protected by [statute] into three categories: (1) information that is not reviewed by the trial judge because there has been no preliminary showing of necessity for a review; (2) information that is reviewed by the trial judge alone, but not thereafter revealed to counsel because it is not even arguably relevant and usable; and (3) information that is re-

viewed by the trial judge and thereafter revealed to counsel in their roles as officers of the court.

*Id.* at 367, 602 A.2d 1247.

We then detailed the process by which consideration must be given by the court to requests for disclosure of information that are made privileged by statute, tracking to a large extent the procedure outlined in *Hamilton* and *Zaal.*

*Reynolds,* of course, dealt with the discoverability of information that is made privileged by statute, not, as here, made confidential by statute. *See, supra,* note 7. Two years later, however, we called for the same procedure to be conducted when the matter sought to be discovered was contained, as here, in the internal investigatory files of a police officer. *Blades v. Woods,* 107 Md.App. 178, 186, 667 A.2d 917 (1995). Recognizing that IAD files are confidential, we determined it necessary to remand the case "for proceedings that will balance [Blades's] legitimate need for relevant information in the records against (1) the privacy rights of other persons and (2) the custodian's duty to maintain confidentiality." *Id.* at 185, 667 A.2d 917 (footnote omitted).

As we did in *Reynolds,* we stated that, on remand, Blades first would have to proffer his need for disclosure and persuade the court that there is a reasonable possibility that the information in the records will assist his case. *Id.* at 186, 667 A.2d 917. "In reviewing this proffer, the court should consider the relationship between the information sought and the nature of the case, as well as the precise issue that the information is expected to address." *Id.*

We went on to say, in *Blades:*

Once the [individual] has demonstrated such need, the trial judge must determine what police department records exist and which of those records are confidential. This determination should be made in camera. Any reviewed records that are deemed not relevant or usable should be sealed and filed separately. Any records that appear to be discoverable shall then be reviewed at an expanded in

camera hearing, with counsel of record present as officers of the court.

*Id.*

## V.

We are not convinced, based on our review of the record in the case at bar, that the court executed any of the steps of the procedure outlined in *Reynolds* and *Blades* before concluding that appellee was entitled to disclosure of that portion of the IAD file concerning "named officer" allegations of dishonesty by Detective Dressel.

There is no record indication that the court determined preliminarily that appellee had satisfied his burden of demonstrating the need for the confidential material. And even if we were to assume that the court did make that preliminary determination, there is nothing in the record indicating that the court conducted the necessary two-step *in camera* review. Moreover, the procedure that the court did employ, ordering the Department to disclose "any statement made by a named police witness that [Dressel] engaged [in dishonesty] in the past," runs afoul of our admonition in *Reynolds* that "[i]t is for the trial judge, not for the patient or the health care provider [or, in the context of the case at bar, the police officer or the Department], to determine what records will be reviewed." 98 Md.App. at 368–69, 633 A.2d 455.

In sum, the court's failure to adhere to the procedure laid out in *Reynolds* and *Blades* compels us to reverse the court's order denying in part and granting in part the Department's motion to quash appellee's subpoena duces tecum. As we noted at the outset of our opinion, our order directing reversal of the court's order was without prejudice to either or both appellee and his co-defendant to seek further relief in accordance with the dictates of *Reynolds* and *Blades*. If they have not already sought such relief, they may, if they wish, do so now. We emphasize, however, that our granting the defendants leave to pursue such relief is not to be construed by them, the Department, or the court, as an intimation by us

that the defendants are entitled to disclosure of any or all of the IAD file they seek. That determination is, in the first instance, for the trial court to make.

**JUDGMENT REVERSED WITHOUT PREJUDICE TO THE RIGHTS OF APPELLEE OR HIS CO–DEFENDANT IN THE UNDERLYING CRIMINAL CASE TO SEEK FURTHER RELIEF NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**